IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| VICKIE W., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) Case No. 17-CV-252-JFJ |
| v. | ) |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Vickie W. seeks judicial review of the decision of the Commissioner of the Social Security Administration denying her claim for disability insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423. In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals. For reasons explained below, the Court reverses and remands the Commissioner's decision denying benefits.

**I.    Standard of Review**

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994)). The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). The Court may neither re-weigh the evidence nor substitute its

judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, the Commissioner's decision stands so long as it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II. Procedural History and Relevant Portions of ALJ's Decision

Plaintiff, then a 49-year-old female, applied for Title II benefits on May 6, 2014, alleging a disability onset date of January 21, 2012. R. 259-260. Plaintiff claimed she was unable to work due to arthritis, diabetes, depression, anxiety, and hypothyroidism. R. 436. Plaintiff's claim for benefits was denied initially on July 2, 2014, and on reconsideration on September 30, 2014. R. 104-126. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ held the hearing on November 16, 2015. R. 54-79.[1] Ultimately, the ALJ found Plaintiff not disabled at step four of the sequential evaluation process, because she was able to perform her past relevant work as a telemarketer. R. 29-53. The ALJ did not make an alternate finding of other work at step five. The Appeals Council denied review, and Plaintiff appealed. R. 1-7; ECF No. 2.

The following portions of the ALJ's decision are relevant to the Court's analysis. At step two of the sequential evaluation process, the ALJ considered the "paragraph B" criteria and found that Plaintiff's medically determinable mental impairments of depression and anxiety were non-severe impairments because they did "not cause more than minimal limitation in the claimant's ability to perform basic mental work activities." R. 36. During his paragraph B analysis, the ALJ found mild limitations in the three functional areas of activities of daily living; social functioning;

---

[1] During the ALJ hearing, Plaintiff amended her alleged onset date to May 27, 2014 and requested a closed period of disability from May 27, 2014 through August 30, 2015. R. 32, 56-57. Plaintiff worked part-time as a telemarketer through July 6, 2015, well after her alleged disability onset date. R. 32, 46.

2

and concentration, persistence, and pace; with no episodes of decompensation. R. 36-37. With respect to concentration, persistence, and pace, the ALJ discussed the claimant's testimony that she quit driving due to issues with concentration, and that she had difficulty reading a script as a telemarketer. R. 37. In this area, however, the ALJ found only a mild limitation, reasoning that Plaintiff's part-time work as a telemarketer "also shows ability to do *at least simple tasks*." *Id.* (emphasis added).

In reaching the conclusion that Plaintiff's mental impairments were non-severe, the ALJ gave "little weight" to two medical source opinions from her treating psychiatrist, Dr. Charles Van Tuyl, who opined that (1) Plaintiff could not do work that "involves close concentration or interaction with the public"; and (2) Plaintiff had a "marked limitation in the ability to understand and remember detailed instructions, maintain attention and concentration for extended periods . . . , and interact with the public." R. 38. The ALJ stated that these opinions merited little weight, because Dr. Van Tuyl's treatment notes did not support his medical opinions and instead revealed "overall normal mental status examinations [that] contradict the extreme limitations Dr. Van Tuyl gives." R. 39.

During the ALJ hearing, Plaintiff's attorney's opening statement called the ALJ's attention to treating physician Dr. Van Tuyl's opinions, which indicated that Plaintiff would have a mental limitation to simple, unskilled work based on her non-severe mental impairments and limiting Plaintiff to "sedentary, unskilled work." R. 58, 59. The ALJ did not include any mental limitations in the RFC, finding instead that Plaintiff had the RFC to perform sedentary work with certain physical limitations. R. 40. The ALJ's reasons for this omission appear to be summarized in this portion of the RFC assessment:

> From [Plaintiff's] testimony, she continued to work part-time as a telemarketer after the amended alleged onset date of disability, and this shows she has the ability to get along with others. There are allegations of difficulty concentrating and reading

3

> her script at work, but part-time work and caring for two children with special needs shows ability to do *at least simple tasks* at a sedentary level full-time. The claimant also gets along with Mr. [W.], her older son (who is 25), and the undersigned finds that the claimant's mental impairments do not limit the [RFC] further.

R. 46 (emphasis added). As part of the RFC assessment, the ALJ also concluded that the "claimant's nonsevere impairments do not impose any additional limitations not already contained within the above [RFC] findings." R. 47. Accepting the vocational expert's testimony at step four that Plaintiff's past relevant work as a telemarketer is "sedentary and semi-skilled," the ALJ found Plaintiff capable of performing her "past relevant work as a telemarketer as generally performed." R. 48.

## III. Issues on Appeal

Plaintiff's appeal relates exclusively to the ALJ's treatment of her mental impairments.[2] Plaintiff raises three points of error: (1) that the ALJ failed to provide legitimate reasons for giving little weight to the opinions of Dr. Van Tuyl; (2) that the ALJ performed a flawed credibility analysis because he made inconsistent findings, and it is not "clear which aspects of the plaintiff's allegations the ALJ found credible and which ones were not" (ECF No. 17 at 8); and (3) that the ALJ erred in making his RFC determination, because he failed to adequately explain the omission of his step two finding of Plaintiff's non-severe mild mental impairment. The Court concludes that the ALJ committed error in relation to his RFC assessment, and this Order is limited to that allegation of error.

## IV. Analysis

### A. Parties' Arguments Related to RFC

---

[2] Plaintiff has waived any argument regarding her physical impairments. *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("We routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief.").

4

In her third allegation of error, Plaintiff does not dispute the ALJ's finding that her mental impairments were non-severe. ECF No. 17 at 9 ("As stated at the hearing, the plaintiff was not trying to prove she was limited to less than unskilled work."). Plaintiff argues that the ALJ erred because he failed to adequately explain, with citations to medical and other evidence, why he excluded the non-severe mental limitations from the RFC. *See id.* at 10 ("The ALJ did not provide a detailed assessment of the plaintiff's mental limitations [at step four] and instead used [summary language].") (citing *Wells v. Colvin*, 727 F.3d 1061 (10th Cir. 2013)). The Commissioner argues that medical evidence presented during the hearing supports the ALJ's decision to exclude a mental limitation. ECF No. 21 at 6-8. The Commissioner further argues that, in contrast to the ALJ in *Wells*, the ALJ adequately explained his omission of any mental limit from the RFC. *Id.* at 8-9.

**B.  Standards Governing Consideration of Non-severe Mental Impairments in Assessing RFC**

Prior to step four of the sequential evaluation process, the ALJ must determine Plaintiff's RFC, which reflects the most a claimant can do despite any impairments. *See* 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1); SSR 96-8p. RFC findings – including assessment of a claimant's mental RFC – "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations)." SSR 96-8p; *Wells*, 727 F.3d at 1069. The regulations require an ALJ to "consider all of [a claimant's] medically determinable impairments . . . including [the claimant's] medically determinable impairments that are not 'severe'" in assessing RFC. 20 C.F.R. § 404.1545(a)(2). The Social Security Administration requires this analysis because, "[w]hile a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may – when considered with limitations or restrictions due to other impairments – be critical to the outcome of a claim." SSR 96-8p.

5

With respect to mental impairments, the Tenth Circuit has held that a "conclusion that the claimant's mental impairments are non-severe at step two does not permit the ALJ simply to disregard those impairments when assessing a claimant's RFC and making conclusions at steps four and five." *Wells*, 727 F.3d at 1068-69. Instead, in an RFC assessment, "the ALJ must consider the combined effect of all medically determinable impairments, whether severe or not." *Id.* at 1069 (citing 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2)). The RFC assessment used at steps four and five requires "a more detailed assessment" because the "paragraph B" criteria are not themselves an RFC assessment; instead, such criteria are used to rate the severity of any mental impairments at steps two and three. *Id.* It is therefore not sufficient for an ALJ to (1) make a finding of non-severity at step two, and (2) summarily conclude that the findings do not result in further limitations in work-related functions in the RFC assessment. *See id.* (finding that mere reliance on step-two findings to conclude a claimant has no limitation based on mental impairments was "inadequate under the regulations and the Commissioner's procedures").

Even if an ALJ references his step-two findings of non-severity as support for his mental RFC, any such error can be cured if the ALJ makes adequate findings in support of his omission of a mental limitation. *Id.* Such findings can satisfy "the ALJ's obligation at step four to provide a more detailed assessment of [the claimant's] ability to complete various job functions as part of determining her RFC." *Id.* However, any such findings must be supported by substantial evidence. *Id.* at 1071 (concluding that the ALJ's "mistaken chronology and use of pre-onset date work cast doubt on the validity of his analysis" and the court could not "credit his conclusion with substantial evidence"). Ultimately, the ALJ's RFC findings and hypothetical must be supported by substantial evidence and should include only those limitations borne out by the record. *See Qualls v. Apfel*, 206 F.3d 1368, 1371-72 (10th Cir. 2000).

  **C. ALJ Erred in Determining Plaintiff's RFC**

At step two, the ALJ found non-severe mental limitations in three functional areas, but he did not include any mental limitation in the RFC. To the extent the ALJ referenced the first ALJ's findings of non-severe depression and panic disorder, *see* R. 41, or his own step two findings of non-severity, *see* R. 47, as a basis for his exclusion of any mental limitation in the RFC, such references are insufficient. *See Wells*, 727 F.3d at 1069.

The Court must next consider whether the ALJ made other findings that "satisfied the ALJ's obligation at step four to provide a more detailed assessment of [Plaintiff's] ability to complete various job functions as part of determining her RFC." *Wells*, 727 F.3d at 1069. The Court finds the ALJ's exclusion of a mental limitation was not adequately explained or supported by substantial evidence. As explained above, the ALJ's primary reason for rejecting an "unskilled work" limitation appears to be that Plaintiff was able to work part time and take care of two special-needs children. *See* R. 36, 37, 43, 45. However, in discussing the abilities required for these tasks, the ALJ twice indicated his belief that this work demonstrated an ability to complete "simple" tasks. For example, in his step two discussion, the ALJ noted that Plaintiff's "work part time as a telemarketer . . . shows ability to do *at least simple tasks*." R. 37 (emphasis added). As part of his credibility analysis in step four, the ALJ reasoned that "part-time work and caring for two children with special needs shows ability to do *at least simple tasks* at a sedentary level full-time." R. 46 (emphasis added). These references to "simple tasks" appear consistent with Plaintiff's requested "simple, unskilled work" limitation in the RFC. *See* SSR 96-9p (describing mental activities required by "unskilled work" as "[u]nderstanding, remembering, and carrying out simple instructions" and "[m]aking judgments that are commensurate with the functions of unskilled work – i.e., simple work-related decisions"). Yet the ALJ did not adequately explain this seeming contradiction with a narrative discussion of medical and other evidence or explain why the non-

severe mental impairments did not impose any functional work limitations. This prevents the Court from "credit[ing] his conclusion with substantial evidence." *Wells*, 727 F.3d at 1071.

In its response brief, the Commissioner argues that, in making the RFC assessment, the ALJ adequately supported his conclusion by discussing the medical opinions of Cory Babb and Jerome Block, both of whom treated Plaintiff for physical impairments along with depression. ECF No. 21 at 9-10. However, the ALJ only discussed these doctors' physical examinations as support for his conclusions regarding physical functioning limitations, not their opinions related to mental functional limitations. R. 41-44. Absent from the RFC assessment is any discussion of Dr. Van Tuyl's two medical source opinions discussed at step two. Further, the Commissioner argues that the ALJ supported his conclusion by stating that Plaintiff cared for disabled children while working part-time. *See* ECF No. 21 at 10. This argument is unpersuasive, because the ALJ also twice indicated these activities demonstrated Plaintiff's ability to complete "simple tasks," rather than semi-skilled tasks, as ultimately found at step four.

The Court concludes that the ALJ failed to complete a proper step-four mental RFC analysis as required by *Wells*. The ALJ's error is vocationally significant, because the ALJ found Plaintiff to be capable of performing her past relevant work as a telemarketer, a semi-skilled job. R. 47. Further, a reasonable factfinder, following the correct analysis and considering evidence in the record supporting the requested mental limitation, could resolve the matter differently. *Cf. Alvey v. Colvin*, 536 F. App'x 792, 794-95 (10th Cir. 2013) (finding error harmless where no reasonable factfinder could reach different conclusion and where plaintiff presented no evidence of treatment by mental practitioner). The matter will be remanded for further proceedings consistent with this Order. *See Wells*, 727 F.3d at 1071 (remanding for further proceedings "concerning the effect of [claimant's] medically determinable mental impairments on her RFC, and for further analysis at steps four and five, including any further hearing the ALJ deems

necessary"); *Farrill v. Astrue*, 486 F. App'x 711, 713 (10th Cir. 2012) (remanding for ALJ's failure to explain exclusion of mild mental limitations found at step two from RFC findings).

IV. **Conclusion**

For the foregoing reasons, the ALJ's decision finding Plaintiff not disabled is **REVERSED and REMANDED** for further proceedings consistent with this Opinion and Order. The ALJ may also revisit the opinion and credibility evidence as necessary based on his revised RFC analysis.

**SO ORDERED** this 28th day of September, 2018.

_____
**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**